**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| In Re | ) | |
| | ) | |
| **JOHN HARRISON WELLFORD, III** | ) | **Case No. 2:19-bk-20135** |
| | ) | **Chapter 11** |
| Debtor. | ) | |
| | ) | |
| **COROTOMAN, INC.** | ) | **Case No. 2:19-bk-20134** |
| | ) | **Chapter 11** |
| Debtor. | ) | |
| | ) | |
| **WEST VIRGINIA WATER DEVELOPMENT** | ) | |
| **AUTHORITY**, acting on behalf of the | ) | |
| **WEST VIRGINIA INFRASTRUCTURE** | ) | |
| **AND JOBS DEVELOPMENT COUNCIL,** | ) | |
| And | ) | |
| **REGIONAL DEVELOPMENT AUTHORITY** | ) | |
| **OF CHARLESTON-KANAWHA COUNTY,** | ) | |
| **WEST VIRGINIA METROPOLITAN** | ) | |
| **REGION** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Adversary Proceeding No.** |
| | ) | **19-_____** |
| **COROTOMAN, INC. and** | ) | |
| **JOHN H. WELLFORD, III,** aka | ) | |
| **JOHN H. WELLFORD, INDIVIDUALLY,** | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

West Virginia Water Development Authority ("WVWDA"), acting on behalf of the West Virginia Infrastructure and Jobs Development Council (the "Infrastructure Council"),[1] and the Regional Development Authority of Charleston-Kanawha County, West Virginia Metropolitan Region ("RDA" and, with WVWDA, the "Plaintiffs") jointly file this complaint ("Complaint") seeking relief, including declaratory judgment and compensatory and punitive damages, against John H. Wellford, III ("Wellford") and Corotoman, Inc. ("Corotoman" and, with Wellford, the "Defendants") for (i) breach of contract, (ii) unjust enrichment, (iii) conversion, (iv) embezzlement, (v) fraud, (vi) false representations, and (vii) obtaining money by false pretenses.  Plaintiffs further allege that Defendant Wellford's debts are non-dischargeable under 11 U.S.C. §§ 523 because they were obtained by and result from (i) false pretenses, false representation(s), and/or actual fraud pursuant to § 523(a)(2), (ii) embezzlement pursuant to § 523(a)(4), and/or (iii) willful and malicious injuries perpetrated on the Plaintiffs by Defendants pursuant to § 523(a)(6).[2]  Accordingly, Plaintiffs seek a determination that Wellford's debt to Plaintiffs described below is excepted from Wellford's discharge pursuant to 11 U.S.C. §§ 523(a) and 1141, Rules 4007 and 7001(6) of the Federal Rules of Bankruptcy Procedure.

In support of this Complaint, Plaintiffs respectfully state and allege as follows:

---

[1] References to WVWDA hereinafter shall be inferred to mean WVWDA on behalf of the Infrastructure Council.

[2]  Plaintiffs previously brought a nondischargeability complaint against Wellford on June 28, 2019, before the deadline for nondischargeability complaints in Wellford's Chapter 13 case.  *See WVWDA, on behalf of WVIJDC, and RDA v. Wellford*, Case No. 19-ap-02008 [Docket No. 1].  Wellford moved to dismiss that case, arguing that the nondischargeability claims should be heard in conjunction with the Plaintiffs claims against Wellford and Corotoman for the underlying acts leading to nondischargeability. To address that concern, Plaintiffs have filed this Adversary Proceeding against both Defendants so that all related claims and causes of action may be heard together.  Plaintiffs will dismiss the prior nondischargeability action pursuant to Rule 41 of the Federal Rules of Civil Procedure, which permit a plaintiff to dismiss a complaint by notice and without a court order where the Defendant has not yet filed an answer or motion for summary judgment.

4829-6386-9353.v7

## THE PARTIES

1.       Plaintiff WVWDA is a governmental instrumentality and body corporate of the State of West Virginia acting by and on behalf of the Infrastructure Council, with its principal place of business in Charleston, West Virginia.

2.       Plaintiff RDA is a West Virginia public corporation with its principal place of business in Charleston, West Virginia.

3.       Defendant Wellford is an individual residing in Charleston, West Virginia and is a debtor before this Court.

4.       Defendant Corotoman is a West Virginia corporation solely owned and controlled by Wellford, with its principal place of business in Charleston, West Virginia, and develops real estate for business and/or residential purposes. Corotoman is also a debtor before this Court.

## JURISDICTION AND VENUE

5.       This is a civil proceeding related to and arising under two bankruptcy cases pending before the United States Bankruptcy Court for the Southern District of West Virginia (the "Court").

6.       This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and 157(b)(2)(I) and (J).

7.       Moreover, the Court has exclusive jurisdiction over this case since it involves dischargeability determinations under 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6), which are core matters.  *See* 4 Resnik, Alan N. & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 523.03 (16th ed. 2009) (citing 1983 Advisory Committee Note to Fed. R. Bankr. P. 4007).

4829-6386-9353.v7

## FACTUAL BACKGROUND

8.      On July 23, 1999, Wellford and Corotoman entered into an Real Estate Purchase Agreement ("Purchase Agreement") with RDA, which is attached hereto as **Exhibit A**.

9.      The purpose of the Purchase Agreement was to provide incentives for Ticketmaster L.L.C. ("Ticketmaster") to operate a call center in Charleston, West Virginia to provide "an opportunity for economic growth and employment of citizens of The City of Charleston, County of Kanawha, State of West Virginia." *See* Exhibit A at 1.  Through the Purchase Agreement and related agreements, the parties aimed to provide Ticketmaster "a relocation alternative comparable to other potential locations for Ticketmaster in other states, counties and other cities[.]" *See id.*

10.     In the Purchase Agreement, RDA agreed to purchase and hold title to real estate at Lot E-1 situated in NorthGate, City of Charleston, Kanawha County, West Virginia, including an office building ("Building") that Corotoman had built specifically to suit Ticketmaster and was leased to Ticketmaster (the "Premises").

11.     The Building was constructed by Corotoman and leased to Ticketmaster on January 14, 1999 (the "Lease").  *See id.* at Exhibit 1.

12.     Several incentives were provided to Ticketmaster to lease the Building and locate its call center on the Premises, which was expected to add over 400 jobs to the Charleston economy.  The City of Charleston adopted Resolution No. 038-98, as amended January 18, 1999, agreeing to contribute $400,000 to the cost of construction of the office building, to be recouped from B&O Taxes to be paid by Ticketmaster.  *See id.*

13.      Also, real estate taxes have not been collected during the term of the Lease. However, the Purchase Agreement requires that Corotoman pay all foregone real estate taxes[3] and repurchase the Premises once the Lease expires or terminates.  *See* Exhibit A at 5-6, ¶ 9.

14.      RDA entered into the Purchase Agreement and borrowed funds to purchase the Premises in reliance on Wellford and Corotoman's promises in the Purchase Agreement, including their agreement to reimburse all foregone real estate taxes upon conclusion of the lease term with Ticketmaster.

15.      On or about May 13, 1999, First Community Bank ("Bank") committed to loan RDA Four Hundred Ten Thousand Dollars ($410,000.00) for the purchase of the Premises.

16.      Pursuant to W.Va. Code § 31-15A-1, *et. seq.*, WVWDA loaned the principal amount of Three Million Dollars ($3,000,000.00) to RDA pursuant to a Loan Agreement dated August 5, 1999, attached as **Exhibit B**, and a Promissory Note ("Note"), attached as **Exhibit C**.

17.      RDA paid Corotoman the sum of Three Million Eight Hundred Ten Thousand Dollars ($3,810,000.00) as the purchase price for the Premises, comprised of (i) Four Hundred Thousand Dollars ($400,000.00) contributed by The City of Charleston (discussed above); (ii) Four Hundred Ten Thousand Dollars ($410,000.00), which were the proceeds of a loan to RDA from First Community Bank, N.A.; and (iii) Three Million Dollars ($3,000,000.00), which were the proceeds of the loan from WVWDA to RDA (the "Infrastructure Loan"), described above.

---

[3] The Purchase Agreement sets forth the calculation of the foregone real estate taxes as being the lesser of either the amount of forgone real estate taxes as calculated by the Assessor of the Kanawha County or "one half of the difference between (a) the fair market value of the Premises and (b) the sum of the payoff amount (principal amounts only) of the Long Term Loans, plus an amount equal to the total documented expenses of Corotoman in connection with the Lease not reimbursed by the Tenant under the Lease." *See* Exhibit A at 8, ¶ 11.

18.     Pursuant to the Purchase Agreement, on or about August 5, 1999, Corotoman (i) executed a deed transferring title to the Premises to RDA and (ii) executed an Assignment of Lease, in which Corotoman assigned the Lease to RDA.

19.     Further, on or about August 5, 1999, RDA executed an Assignment of Rents and Leases to WVWDA so that rent payments collected from Ticketmaster could be applied against RDA's indebtedness under the Infrastructure Loan.

20.     The Purchase Agreement required Corotoman "to strictly and timely perform all of the obligations of the Landlord in the Lease…."  *See* Exhibit A at 3, ¶ 6.  These obligations included collecting rent and other payments due to the Landlord under the Lease, which had been assigned to WVWDA.  *See id.*

21.     Corotoman and Wellford failed to properly maintain the Premises as required under the Lease, including, but not limited to, repairs to the roof and HVAC system of the Building.

22.     The Purchase Agreement also required Corotoman to "promptly pay on behalf of RDA all amounts due" on the Infrastructure Loan.  *See id.* at 4, ¶ 7.  Wellford and Corotoman were also "authorized and directed to, and shall, keep and maintain all of the covenants of RDA under each of the Deeds of Trust … and Assignments of Rents and Leases … executed in favor of WVWDA and the Bank in connection with the Long Term Loans."  *See id.*

23.     Wellford, as the 100% owner and sole employee and agent of Corotoman, unconditionally "personally guarantee[d] and adopt[ed] directly, jointly and severally **as his own personal obligation**, the obligations and duties of Corotoman [in the Purchase Agreement].  The rights and obligations of Corotoman herein and in the Lease may be assigned to, assumed by, exercised by and/or performed by Wellford."  *See id.* at p. 8, ¶ 12 (emphasis added).

24.     Wellford executed the Guaranty Agreement attached hereto as **Exhibit D** on August 5, 1999 ("Guaranty"), in which he unconditionally guaranteed

> **as primary obligor** and not merely as surety. . . to the Lender [(WVWDA)] (i) the due and punctual payment of all present and future indebtedness evidenced by or arising out of the Agreement and any note issued by the Borrower [(RDA)] thereunder (whether one or more, the 'Note'), including, but not limited to, the **due and punctual payment of principal of and interest on that certain Promissory Note of the Borrower payable to the order of the Lender dated August 5, 1999, in the principal amount of $3,000,000**, together with all renewals, extensions or modification thereof, and **the due and punctual payment of all other fees or other charges now or hereafter owed by the Borrower under the Agreement, the Note and the Lease**, as and when the same shall become due and payable, whether at maturity, by acceleration or otherwise, according to the terms of the Agreement, the Note and the Lease, **and all losses, costs, expenses and attorneys' fees incurred by reason of a default under the Agreement, the Note, the Lease or hereunder**.  In case of failure by the Borrower punctually to pay any amounts due under the Agreement, the Note or the Lease, Guarantor hereby unconditionally agrees to cause such payment to be made punctually as and when the same shall become due and payable, whether at maturity or by acceleration or otherwise, and as if such payment were made by the Borrower.

*See* Exhibit D at p. 3, ¶ 2 (emphasis added).

25.     The Note is in default and arrears.  The default and arrearage arose as a result of Wellford and Corotoman's failure to pay to WVWDA money that they collected, on behalf of RDA pursuant to the Purchase Agreement, from Ticketmaster in the amount of approximately One Million Five Hundred Sixty Thousand Dollars ($1,560,000.00) (the "Rental Funds"), which belonged to RDA and had been assigned to WVWDA.

26.     Instead of paying the Rental Funds to WVWDA, Wellford and Corotoman used or caused these Rental Funds to be used for their own purposes without authority or justification.

27.     The failure of Corotoman and Wellford to pay over the Rental Funds to WVWDA allowed interest to accumulate on the Infrastructure Loan.

4829-6386-9353.v7

28.     Wellford and Corotoman's use of the Rental Funds for purposes other than to pay RDA's debt on the Infrastructure Loan was a material breach of the Purchase Agreement and the Guaranty.

29.     Wellford and Corotoman have never disclosed the use of the Rental Funds to the Plaintiffs.

30.     Pursuant to the terms of the Note, WVWDA elected to declare all sums owing under the Note immediately due and payable.

31.     Corotoman and Wellford are obligated pursuant to the Purchase Agreement to pay the entirety of the accelerated indebtedness outstanding on the Note.  *See* Exhibit A at 4, ¶ 7 and 8, ¶ 12.

32.     Wellford is obligated pursuant to the Guaranty to pay the entirety of the accelerated indebtedness outstanding on the Note.  *See* Exhibit D at 3, ¶ 2.

33.     Under the Purchase Agreement, Corotoman is required to "protect, defend, indemnify and hold harmless RDA from all claims, demands, penalties, fines, and other costs incurred by RDA in connection with the review, approval and assignment of the Lease, the acquisition of the Premises and the funding of the Long Term Loans including ***any attorneys fees, expert witness fees, and other costs incurred in connection with the Lease***, excepting only claims by Corotoman against RDA for intentional breach of, or default in or under this [Purchase] Agreement."  *See* Exhibit A at 4, ¶ 6.

34.     Wellford is also obligated to pay WVWDA "any costs or expenses [incurred] in protecting or enforcing its rights under the [Purchase] Agreement, the Note, the Lease or [the] Guaranty, including but not limited to reasonable attorneys' fees and the costs and expenses of litigation. . . ."  *See* Exhibit D at p. 8, ¶ 4.

35.    Plaintiffs have gone to great expense to enforce their rights under the Purchase Agreement and Guaranty.

36.    Neither Corotoman nor Wellford have paid the amounts due and owing under the Note and the Purchase Agreement and, therefore, Corotoman and Wellford are in default of the Purchase Agreement and Wellford is in default of the Guaranty.[4]

### Count I – Breach of Purchase Agreement: Arrearages
### (Plaintiffs against Defendants)

37.    RDA and WVWDA realleges and incorporates paragraphs 1 through 36 as though fully restated herein.

38.    The Purchase Agreement is a valid and enforceable contract supported by adequate consideration.

39.    Wellford was party to the Purchase Agreement to personally guarantee and adopt directly, jointly and severally as his own personal obligation, the obligations and duties of Corotoman.

40.    RDA assigned its right to receive the Rental Funds under the Purchase Agreement to WVWDA.

41.    By executing the Purchase Agreement, Corotoman and Wellford agreed to undertake all of RDA's duties as landlord to Ticketmaster, including the collection of rent, and to promptly pay and perform RDA's obligations under the Infrastructure Loan.

42.    WVWDA is a valid assignee with rights under the Purchase Agreement.

43.    Corotoman and Wellford materially breached the Purchase Agreement by failing to strictly and timely perform all of the obligations of RDA under the Ticketmaster Lease.

---

[4] As of the March 29, 2019 petition date (the "Petition Date"), Wellford owed WVWDA $2,021,097.35. To the extent this amount is not dischargeable, interest will continue to accrue until paid. *See* Case No. 19-bk-20135, Claim No. 3 at pp. 5–6 (providing an itemized calculation of this amount). WVWDA is also entitled to recover attorneys' fees that continue to accrue after May 31, 2019. *See id.*

4829-6386-9353.v7

44.     Corotoman and Wellford materially breached the Purchase Agreement by failing to pay all collected Rental Funds to WVWDA.

45.     Corotoman and Wellford materially breached the Purchase Agreement by failing to pay all amounts due on the Infrastructure Loan to WVWDA.

46.     Corotoman and Wellford materially breached the Purchase Agreement by causing RDA to default on the Infrastructure Loan.

47.     Corotoman and Wellford materially breached the Purchase Agreement by failing to indemnify the RDA and hold the RDA harmless from the consequences of its breach of the Purchase Agreement.

48.     Corotoman and Wellford materially breached the Purchase Agreement by impairing the rights of the WVWDA under the Infrastructure Loan.

49.     Despite demand and an opportunity to cure, Defendants have not cured the above defects.

50.     Under West Virginia law, the "rule for damages as a result of breach of contract is that recovery may be obtained for those damages which either arise naturally from the breach or may reasonably have been within the contemplation of the parties at the time they made the contract." *Desco Corp. v Harry W. Thrushel Const. Co.*, 186 W.Va. 430, 434, 413 S.E.2d 85, 89 (1991).

51.     Corotoman and Wellford's material breaches of contract resulted in damages exceeding $2,021,097.35, as set forth on WVWDA's proof of claim filed in Wellford's bankruptcy case (Claim No. 3), which amount is not dischargeable in Defendant Wellford's bankruptcy case

### Count II – Breach of Purchase Agreement: Foregone Real Estate Taxes
### (RDA against Defendants)

52.     RDA realleges and incorporates 1 through 51 as though fully restated herein.

53.     Under the terms of the Purchase Agreement, Corotoman and Wellford agreed to repurchase the property from RDA upon expiration or termination of the Lease.

54.     Because repayment of forgone real estate taxes was a requirement for Corotoman and Wellford's repurchase of the Premises, and Corotoman and Wellford were obligated to repurchase the Premises, the foregone real estate taxes are damages that arise naturally from the breach of the Purchase Agreement.

55.     The foregone real estate taxes are damages which were reasonably necessary within the contemplation of the parties at the time the Purchase Agreement was made.

56.     Because Corotoman and Wellford are now in material breach of the Purchase Agreement, RDA is entitled to receive the benefit of the bargain made.

57.     Payment of the foregone real estate taxes was a benefit which RDA bargained for when the Purchase Agreement was entered.

58.     Therefore, RDA is entitled to receive the foregone real estate taxes calculated pursuant to the Purchase Agreement.

### COUNT III – Breach of Commercial Guaranty Agreement
### (WVWDA against Wellford)

59.     WVWDA re-alleges and incorporates paragraphs 1 through 58 as though fully restated herein.

60.     The commercial Guaranty executed by Wellford for the benefit of WVWDA is a valid and enforceable contract supported by adequate consideration.

11

61.     As stated in the Guaranty, Wellford received "benefits and financial and other advantages from the [Infrastructure Loan]." *See* Exhibit D at 2.

62.     The Guaranty was required by WVWDA as a condition precedent to making the Infrastructure Loan and was voluntarily accepted by Wellford. *See id.*

63.     By executing the Guaranty, Wellford unconditionally guaranteed, as primary obligor and not merely as surety,

> (i)     the due and punctual payment and performance of all of [RDA]'s obligations under the Lease, as the same may be amended or modified from time to time, and
>
> (ii)     the due and punctual payment of all present and future indebtedness evidenced by or arising out of the [Loan] Agreement and any note issued by the RDA thereunder (whether one or more, the "Note"), including, but not limited to, the due and punctual payment of principal of and interest on that certain Promissory Note of the Borrower payable to the order of [WVWDA] dated August 5, 1999, in the principal amount of $3,000,000, together with all renewals, extensions or modifications thereof, and the due and punctual payment of all other fees or other charges now or hereafter owed by the Borrower under the Agreement, the Note and the Lease, as and when the same shall become due and payable, whether at maturity, by acceleration or otherwise, according to the terms of the Agreement, the Note and the Lease, and all losses, costs, expenses and attorneys' fees incurred by reason of a default under the Agreement, the Note, the Lease or hereunder.  In case of failure by the Borrower to punctually pay any amounts due under the Agreement, the Note or the Lease, Guarantor hereby unconditionally agrees to cause such payment to be made punctually as and when the same shall become due and payable, whether at maturity or by acceleration or otherwise, and as if such payment were made by [RDA].

64.     WVWDA performed its obligations related to the Infrastructure Loan by providing the RDA the principal amounts agreed upon, which, in turn, were paid to Corotoman in purchase of the Premises.  All conditions precedent to enforcement of the Guaranty have been satisfied.

65.     As of the Petition Date, the Note was in default and in arrears as a result of Corotoman failure to pay approximately $1,560,000.00 in Rental Funds that it had received from Ticketmaster to WVWDA as required by the Purchase Agreement.

66.     Corotoman and Wellford collected the Rental Funds and used them for other unauthorized purposes in breach of the Purchase Agreement.

67.     Wellford defaulted on the Guaranty by failing to make timely payments on the balance owed with respect to the Infrastructure Loan.

68.     Wellford's defaults are a material breach of the Guaranty.

69.     Despite demand and an opportunity to cure, Wellford has not cured the above defaults.

70.     As a direct and proximate result of Wellford's defaults and material breach of the Guaranty, WVWDA has suffered and continues to suffer actual loss and damages exceeding $2,021,097.35, plus pre-judgment interest at the contract rate, and other fees authorized by contract.  Specifically, WVWDA has been compelled to hire legal counsel to institute this adversary proceeding to enforce its rights, and under the Guaranty, WVWDA is entitled to recover its reasonable attorneys' fees and costs.  *See* WVWDA Claim 3, Bankruptcy Case No. 19-bk-20135.

### Count IV - Unjust Enrichment, in the alternative
### (Plaintiffs against Defendants)

71.     RDA and WVWDA re-allege and incorporate paragraphs 1 through 70 as though fully restated herein.

72.     As an alternative to the breach of contract claims, WVWDA and RDA are entitled to relief under the doctrine of unjust enrichment.

73.     It would be unjust to permit Wellford and Corotoman to retain the benefits received under the Purchase Agreement without also requiring them to justly compensate WVWDA and RDA for those benefits.

74.     "[I]f benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving the benefits to pay their reasonable value." *Realmark Devs., Inc. v. Ranson*, 542 S.E.2d 880, 885 (W. Va. 2000).  Unjust enrichment is based upon equitable principles and is sometimes referred to as "restitution, a contract implied in law, quasi-contract, or an action in *assumpsit*," but it is an action at law for which the remedy is money damages.  *See Realmark Devs., Inc. v. Ranson*, 588 S.E.2d 150, 153 (W. Va. 2003).

75.     Wellford and Corotoman had the right to collect Rental Funds acting as Landlord for RDA, but they at no time owned the Rental Funds.  Wellford and Corotoman were required by the Purchase Agreement to pay the Rental Funds to WVWDA in payment of RDA's Infrastructure Loan. It would be inequitable to permit Wellford and Corotoman to retain these benefits without paying their reasonable value to WVWDA for the benefit of RDA.

76.     RDA and WVWDA are entitled to relief under the theory of unjust enrichment.

77.     Should the Court determine that Wellford has not breached the Guaranty because the Guaranty was not an enforceable contract, the Court should alternatively find that Wellford is liable to WVWDA under the law of unjust enrichment.

78.     Should the Court determine that Wellford and Corotoman have not breached the Purchase Agreement because the Purchase Agreement was not an enforceable contract, the Court should alternatively find that Wellford and Corotoman is liable to WVWDA and RDA under the law of unjust enrichment.

79.     Under the law of unjust enrichment, Wellford and Corotoman should be required to repay the money they have received or benefitted from, as loaned to RDA by WVWDA, plus interest and costs representing the benefit of the use of such money.

## Count V - Conversion
### (Plaintiffs against Defendants)

80.     RDA and WVWDA re-allege and incorporate paragraphs 1 through 79 as though fully restated herein.

81.     Under West Virginia law, conversion is defined as follows:

Any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as conversion and it is not necessary that the wrongdoer apply the property to his own use. And when such conversion is proved the plaintiff is entitled to recover irrespective of good or bad faith, care or negligence, knowledge or ignorance.

Syl. Pt. 17, *Rodgers v. Rodgers*, 184 W. Va. 82, 399 S.E.2d 664, 668 (1990).

82.     Corotoman and Wellford collected Rental Funds from Ticketmaster on RDA's behalf in accordance with the Purchase Agreement.

83.     Pursuant to the Purchase Agreement, Corotoman and Wellford were obligated to pay over the Rental Funds to WVWDA in payment of RDA's indebtedness under the Infrastructure Loan.

84.     However, Corotoman and Wellford wrongfully exerted dominion over RDA and WVWDA's property by impermissibly using the Rental Funds for their own purposes.

85.     Corotoman and Wellford's acts constitute a "tortious taking," a "use or appropriation to the use of the defendant[s] indicating a claim of right in opposition to the rights of the owner," or "a refusal to give up the possession to the owner on demand." *See Tilhance Creek Investments, LLC v. BCBank, Inc.*, Civil Action No. 12-0290, 2013 WL 1286130, at *8 (W. Va. Mar. 29, 2013).

86.     Corotoman and Wellford have unlawfully converted RDA and WVWDA's property to their own use.

87.     Therefore, the Plaintiffs are entitled to a judgment against the Defendants for the value of the property which has been converted by Corotoman and Wellford, an amount equal to $1,561,000.87, plus interest and punitive damages.

### Count VI – Fraud
### (Plaintiffs Against Defendants)

88.     RDA and WVWDA re-allege and incorporate paragraphs 1 through 87 as though fully restated herein.

89.     Under West Virginia law, the essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; (3) that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (4) that the plaintiff was damaged because the plaintiff relied on it. Syl. Pt. 1, *Lengyel v. Lint*, 167 W. Va. 272, 280 S.E.2d 66 (1981). "By definition, fraud does not require in all circumstances that its perpetrator have actual knowledge of the material falsity of a statement." *Cordial v. Ernst & Young*, 199 W.Va. 119, 130, 483 S.E.2d 248, 259 (1996). Fraud can be either in the inducement of a contract or in the execution of a contract. *Tolley v. Poteet*, 62 W.Va. 231, 57 S.E. 811 (1907).

90.     "Fraud may be either actual or constructive. The word *fraud* is a general term and construed in its broadest sense embraces both actual and constructive fraud. Actual fraud, or fraud involving guilt, is defined as anything falsely said or done to the injury of property rights of another." *Hulings v. Hulings Lumber Co.*, 38 W.Va. 351, 18 S.E. 620 (1893). "Actual fraud is intentional, and consists of intentional deception to induce another to part with property or to

surrender some legal right, and which accomplishes the end designed. *Miller v. Huntington &
Ohio Bridge Co.*, 123 W.Va. 320, 15 S.E.2d 687, 695 (1941).

91.     "Constructive fraud is a breach of legal or equitable duty, which, irrespective of
moral guilt of fraud feasor, the law declares fraudulent, because of its tendency to deceive others,
to violate public or private confidence, or to injure public interests. Neither actual dishonesty of
purpose nor intent to deceive is an essential element of constructive fraud. An intent to deceive is
an essential element of actual fraud. The presence or absence of such intent distinguishes actual
fraud from constructive fraud." *Id.*

92.     "Perhaps the best definition of constructive fraud is that it exists in cases in which
conduct, although not actually fraudulent, ought to be so treated, that is, in which conduct is a
constructive or *quasi fraud*, which has all the actual consequences and legal effects of actual
fraud. Constructive fraud does not require proof of fraudulent intent. The law indulges in an
assumption of fraud for the protection of valuable social interests based upon an enforced
concept of confidence, both public and private." *Stanley v. Sewell Coal Co.*, 169 W.Va. at 76–77,
285 S.E.2d at 682–83 (1981).

93.     Wellford and Corotoman's acts constitute both actual and constructive fraud.

94.     Wellford also personally induced RDA and WVWDA to enter into the
transactions described above by guaranteeing payment and performance of all obligations
required of Corotoman under the Purchase Agreement.

95.     Actual fraud is present under West Virginia law because (1) Defendants induced
WVWDA and RDA into transactions and contractual relationships (*i.e.*, the Purchase Agreement
and Guaranty) wherein they assumed RDA's responsibilities as Landlord to collect rent from
Ticketmaster and assumed RDA's obligation to pay the Rental Funds to WVWDA,

17

(2) Defendants collected rent from Ticketmaster but did not pay it to WVWDA, (3) RDA and

WVWDA reasonably relied upon Wellford's representations, and (4) RDA and WVWDA were

materially damaged when Defendants used the Rental Funds for their own purposes instead of

using it to pay down the Note.

96.     Constructive fraud is present under West Virginia law because Defendants

breached their legal duties under the Purchase Agreement and Guaranty and equitable duties to

the citizens of The City of Charleston, County of Kanawha, State of West Virginia.

97.     Providing an opportunity for economic growth and employment of citizens of The

City of Charleston, County of Kanawha, State of West Virginia is a valuable social interest.

98.     Defendants' retention of the Rental Funds had a tendency to deceive the Plaintiffs

and injure public interests.

### Count VII – False Representations
### (Plaintiffs against Defendants)

99.     RDA and WVWDA re-allege and incorporate paragraphs 1 through 98 as though

fully restated herein.

100.    Under West Virginia law, "[w]here one person induces another to enter into a

contract by false representations which he is in a situation to know, and which it is his duty to

know, are untrue, he, in contemplation of law, does know the statements to be untrue, and

consequently they are held to be fraudulent, and the person injured has a remedy for the loss

sustained by an action for damages. It is not indispensable to a recovery that the defendant

actually knew them to be false." Syl. Pt. 1, *Horton v. Tyree,* 104 W.Va. 238, 139 S.E. 737

(1927).

101.    Upon information and belief, Wellford and Corotoman made false representations

to WVWDA and RDA with the purpose and intent of deceiving them into believing that

Defendants would fulfill the obligations to RDA and WVWDA under the Purchase Agreement and the Guaranty.

102.    "Whether one made a representation with intent to deceive is determined from the facts and circumstances surrounding the case under consideration. Denial of such intent by the party charged therewith is not controlling and will even be disregarded if the factual situation clearly shows the contrary. A willfully false representation is presumed from the circumstances of the transaction and the situation of the parties and fraudulent intent may be imputed or inferred." *Beneficial Finance Co. of Charleston v. Collins*, 150 W.Va. 655, 666, 149 S.E.2d 221, 228 (1966).

103.    Accordingly, Defendants' intent to deceive RDA and WVWDA can be inferred from their material failure to perform as promised under the Purchase Agreement and Guaranty, instead keeping the Rental Funds for their own purposes.

104.    Plaintiffs reasonably relied upon Defendants' representations that they personally would perform in conformity with the terms of the Purchase Agreement and the Guaranty.

105.    Plaintiffs were damaged by their reasonable reliance upon the false representations of Defendants because Defendants used and consumed the Rental Funds instead of providing them to WVWDA in payment of RDA's loan obligations under the Note.

### Count VIII – Obtaining Money, Property and Services by False Pretenses
### (Plaintiffs Against Defendants)

106.    RDA and WVWDA re-allege and incorporate paragraphs 1 through 105 as though fully restated herein.

107.    Under West Virginia law, a person has obtained money, property or services by false pretenses if he obtains from another by any false pretense, token or representation, with intent to defraud, any money, goods or other property which may be the subject of larceny.

108.     Essential elements of obtaining money or property by false pretenses are intent to defraud, use of false pretense to accomplish that objective, and accomplishment of fraud in some degree by means of false pretense, though false pretense need not be sole inducing cause of owner's parting with property. *State v. Barnes*, 177 W.Va. 510, 354 S.E.2d 606 (1987). A person who obtains a loan of money by means of knowingly false representation or pretense relating to past or existing fact may be convicted of crime of obtaining money by false pretenses. *Id.* Furthermore, when one makes a promise to perform in the future with the intent to cheat, defraud, or deceive, such promise constitutes a misrepresentation of existing fact that is indictable as false pretense. *Id.*

109.     Prosecution for an offense under this section does not bar or otherwise affect adversely any right or liability to damages, forfeiture or other civil remedy arising from any or all elements of the criminal offense. W. Va. Code § 61-03-24(f).

110.     Pursuant to the Purchase Agreement, Defendants promised to pay over the Rental Funds collected from Ticketmaster to WVWDA.

111.     Plaintiffs believed that Defendants, acting as Landlord, would comply with the Purchase Agreement by collecting the rent from Ticketmaster and paying it to WVWDA.

112.     Instead, Defendants knowingly and willfully collected Rental Funds from Ticketmaster on RDA's behalf in accordance with the Purchase Agreement, but used the Rental Funds for their own purposes.

113.     Upon information and belief, Defendants intended to defraud Plaintiffs under the Purchase Agreement and Guaranty in order to obtain these Rental Funds and use them for their own purposes.

20

114.    Upon information and belief, Defendants' promises to Plaintiffs were made with the purpose and intent of deceiving them into believing that Defendants would fulfill the obligations to Plaintiffs under the Purchase Agreement and the Guaranty.

115.    Upon information and belief, Defendants made a promise to perform in the future with the intent to cheat, defraud, and deceive Plaintiffs.

116.    Defendants' promise to pay constitutes a misrepresentation of existing fact which is indictable as a false pretense.

117.    Defendants obtained money and property from Plaintiffs by false pretenses and are liable for civil damages and forfeiture pursuant to W. Va. Code § 61-3-24(f).

### Count IX – Declaratory Judgment
### (Plaintiffs against Defendants)

118.    Plaintiffs re-allege and incorporates paragraphs 1 through 117 as though fully restated herein.

119.    Plaintiffs seek declaratory judgments from this Court pursuant to the West Virginia Uniform Declaratory Judgments Act, W. Va. Code §§ 55-13-1 *et seq.*

120.    As discussed above, Defendants have materially breached the Purchase Agreement and Guaranty.  On October 17, 2018, as a result of Defendants' material breaches of the Purchase Agreement, RDA exercised its authority to terminate the Defendants' rights under the Purchase Agreement.

121.    Plaintiffs request that this Court enforce the Plaintiffs' rights under the Purchase Agreement and Guaranty for payment and collection of amounts owed by Defendants under the Purchase Agreement and Guaranty, including the full accelerated balance of the Infrastructure Loan, interest, costs, attorneys fees, and foregone real estate taxes.

122.    Additionally, Plaintiffs request that this Court declare that the Defendants are liable to the Plaintiffs for conversion (Count V), actual fraud (Count VI), false representations (Count VII), and obtaining money, property and services by false pretenses (Count VIII).

123.    Further, RDA requests that this Court declare that Corotoman and Wellford are required to repair the roof and HVAC system on the Premises or otherwise required to pay for the repair of the roof and HVAC system.

## COUNT X
### (11 U.S.C. § 523(a)(2)) -- Debt Nondischargeable Due to Wellford's False Pretenses, False Representation, and/or Actual Fraud)

124.    Paragraphs 1 through 123 are incorporated herein by reference.

125.    Section 523(a)(2) of the Bankruptcy Code provides in relevant part that "[a] discharge under section. . . 1141. . . of this title does not discharge an individual debtor from any debt—. . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" *See* 11 U.S.C. § 523(a)(2).

126.    Wellford, as an experienced businessman, caused Corotoman to enter into the transactions described above, through which Corotoman (1) obtained money from RDA, including the $3,000,000 loaned by WVWDA, in purchase of the Building and (2) assumed the role of landlord on behalf of RDA, including the obligations to collect rent from Ticketmaster and use those funds to pay RDA's debts to WVWDA and First Community Bank.

127.    Wellford not only caused Corotoman to promise to fulfill the obligations of RDA as landlord, but Wellford personally guaranteed payment and performance of all obligations required under the Purchase Agreement.

128.     Wellford intentionally breached these obligations by collecting <u>over $1.5 million</u>

in Rental Funds from Ticketmaster and then using them for his own purposes instead of fulfilling

RDA's loan obligations to WVWDA and First Community Bank.  Wellford has also failed to

perform on his Guaranty.

***<u>Actual Fraud</u>***

129.     These acts by Wellford constitute actual fraud.

130.     As explained in <u>Collier on Bankruptcy</u>,

Actual fraud consists of any deceit, artifice, trick or design involving direct and
active operation of the mind, used to circumvent and cheat another—something
said, done or omitted with the design of perpetrating what is known to be a cheat
or deception.

4 Resnik, Alan N. & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 523.08[1][e] (16th ed. 2009)

(citing *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284 (5th Cir. 1995); *Citibank (S.D.), N.A. v.*

*Eashai (In re Eashai)*, 87 F.3d 1082 (9th Cir. 1992); *see McClellan v. Cantrell*, 217 F.3d 89- (7th

Cir. 2000)).

131.     Under West Virginia law, the elements of "actual fraud" are as follows:

(1) that the act claimed to be fraudulent was the act of the defendant or induced by
him; (2) that it was material and false; that plaintiff relied upon it and was
justified under the circumstances in relying upon it; and (3) that he was damaged
because he relied on it.

Syl. Pt. 2, *Horton v. Prof'l Bureau of Collections of Md., Inc.*, 238 W. Va. 310, 794 S.E.2d 395

(2016).

132.     Actual fraud is present under West Virginia law because (1) Wellford induced

WVWDA and RDA into transactions and contractual relationships (*i.e.*, the Purchase Agreement

and Guaranty) wherein he promised to collect rent from Ticketmaster and pay it to WVWDA,

(2) RDA and WVWDA reasonably relied upon those representations, and (3) RDA and

WVWDA were materially damaged when Wellford used the Rental Funds for his own purposes instead of using it to pay down the Note.

### *False Representations*

133.    The debt is also not dischargeable under section 523(a)(2)(A) because Wellford obtained money by false representations.

134.    To prevail in a case under 11 U.S.C. § 523(a)(2)(A) where a debtor obtained money by false representation, a plaintiff must demonstrate that the debtor: (1) made a false representation; (2) knew that the representation was false; (3) intended to deceive; (4) produced the victim's justifiable reliance on the representation; and (5) proximately caused the damage. *See Brannon v. Reynolds (In re Reynolds)*, 543 B.R. 235, 242 (Bankr. S.D.W. Va. 2015) (citing *SG Homes Assocs., LP v. Marinucci*, 718 F.3d 327, 334 (4th Cir. 2013); *Boyuka v. White (In re White)*, 128 Fed.Appx. 994, 998 (4th Cir. 2005) (internal citations omitted)).

135.    "Under § 523(a)(2)(1), 'the false representations giving rise to the debt must have been knowingly and fraudulently made," or, in other words, they must have involved moral turpitude or intentional wrong." *See id.* (citing 4 Alan N. Resnik & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 523.08[d] (16th ed. 2009); *In re Reecher*, 514 B.R. 136, 159 (Bankr. D. Md. 2014) (internal quotations and citations omitted)).

136.    Upon information and belief, Wellford made false representations to WVWDA and RDA of his intention to perform under the Purchase Agreement and Guaranty in order to obtain these funds that belonged to RDA and were to be paid to WVWDA.

137.    Upon information and belief, Wellford's misrepresentations to WVWDA and RDA were made with the purpose and intent of deceiving them into believing that Wellford

24

would fulfill the obligations to RDA and WVWDA under the Purchase Agreement and the Guarantee.

138.    A misrepresentation by a debtor can be inferred from the fact that the debtor failed to take steps to comply with the promise to undertake contractual duties.  *See, e.g., In re Barnette*, 281 B.R. 869 (Bankr. W.D. Pa. 2002) (intent to deceive inferred from the debtor's failure to perform under a contract).  Accordingly, Wellford's intent to deceive RDA and WVWDA can be inferred from his material failure to perform as promised under the Purchase Agreement, instead keeping the Rental Funds for his own purposes.

139.    WVWDA and RDA reasonably relied upon Wellford's representations that Corotoman and Wellford personally would perform in conformity with the terms of the Purchase Agreement and the Guarantee.

140.    WVWDA and RDA were damaged by their reasonable reliance upon the representations of Wellford because Wellford used and consumed the Rental Funds instead of providing them to WVWDA in payment of RDA's loan obligations under the Note.

141.    The total amount of Plaintiffs' damages caused by Wellford's false pretenses, fraudulent representations and/or actual fraud constitutes a non-dischargeable debt under 11 U.S.C. § 523(a)(2)(A).

### COUNT XI
### (11 U.S.C. § 523(a)(4) -- Debt Nondischargeable Due to Wellford's Embezzlement)

142.    Paragraphs 1 through 141 are incorporated herein by reference.

143.    Section 523(a)(4) of the Bankruptcy Code provides in relevant part that "[a] discharge under section. . . 1141. . . of this title does not discharge an individual debtor from any debt—for. . . embezzlement . . . [.]"  *See* 11 U.S.C. § 523(a)(4).

144.    "Under § 523(a)(4), embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *In re Reynolds*, 543 B.R. at 243 (citations omitted) (internal quotation marks omitted).[5]

145.    "Some bankruptcy courts have held that, to demonstrate embezzlement, a plaintiff must show: 1) property owned by another which is rightfully in the possession of the defendant; 2) that the defendant appropriated the property for personal use; and 3) that the appropriation occurred with fraudulent intent or by deceit." *Id.* (citation omitted).

146.    Wellford, as the sole owner, controller, and employee of Corotoman, caused Corotoman to collect the Rental Funds on RDA's behalf pursuant to the Purchase Agreement and then impermissibly use them for his own purposes.

147.    These Rental Funds belonged to the RDA and were required to be paid to WVWDA under the Purchase Agreement.

148.    Wellford appropriated the Rental Funds for a use other than which he was permitted under the transaction documents.

149.    Wellford was not lawfully entitled to use the Rental Funds for himself or his business, Corotoman.

150.    Wellford did appropriate the Rental Funds, through Corotoman, for his own use and benefit.

151.    In doing so, Wellford intended to permanently deprive Plaintiffs of the Rental Funds.

---

[5]   Embezzlement differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking.  *See, e.g., Reynolds*, 543 B.R. at 243; 4 Resnik, Alan N. & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 523.10[2] (16th ed. 2009).

4829-6386-9353.v7

152. Wellford's conduct in appropriating the Rental Funds for his own without Plaintiffs' knowledge or consent demonstrates that his actions involved intentional wrongdoing or deceit.

153. The total amount of Plaintiffs' damages caused by Wellford's embezzlement constitutes a non-dischargeable debt under 11 U.S.C. § 523(a)(4).

**COUNT XII**
**(11 U.S.C. § 523(a)(6)) -- Nondischargeability Due to Willful and Malicious Injury by Wellford to the Property of the Plaintiffs)**

154. Paragraphs 1 through 153 are incorporated herein by reference.

155. Section 523(a)(6) of the Bankruptcy Code provides in relevant part that "[a] discharge under section. . . 1141. . . of this title does not discharge an individual debtor from any debt—for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" *See* 11 U.S.C. § 523(a)(6).

156. The term "entity" is defined broadly to include a person, estate, trust, and a governmental unit. *See* 11 U.S.C. § 101(15).

157. As this court has explained, "[t]he word 'willful' requires deliberate or intentional acts, while 'malicious' refers to acts that are 'wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill will.'" *See, e.g., Aaron v. Lilly (In re Lilly),* A.P. Case No. 17-ap-02002, 2018 WL 1514412 at *3 (Bankr. S.D.W. Va. 2018) (citing *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.E.2d 90 (1998); *Nestorio v. Assoc. Commer. Corp. (In re Nestorio)*, 250 B.R. 50, 57 (D. Md. 2000) (quoting *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1008 (4th Cir. 1985); S. REP. NO. 95-989, at 79 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5865; H.R. REP. NO. 95-595, at 365 (1977) reprinted in 1978 U.S.C.C.A.N. 5963, 6320).

158.    Wellford willfully and maliciously injured the Plaintiffs by his conversion of the

Rental Funds.  A debt arising from "willful and malicious injury" includes debts arising from a

"willful and malicious conversion."  *See Quality Car and Truck Leasing, Inc. v. Adkins (In re*

*Adkins)*, 567 B.R. 501, 508 (Bankr. S.D.W. Va. 2017) (explaining that "[g]enerally § 523(a)(6)

applies to torts, but conversion can sometimes fall under § 523(a)(6)"), *reconsideration denied*,

No. 2:14-AP-2082, 2017 WL 4127770 (Bankr. S.D.W. Va. Sept. 13, 2017); 4 Resnik, Alan N. &

Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 523.12 (16th ed. 2009) (citing to 124 Cong. Rec.

H11,095-11,096 (daily ed. Sept. 28, 1978), *reprinted in* App. Pt. 4(f)(iii) *infra*; S17, 412–13

(DAILY ED. Oct. 6, 1978), *reprinted in* App. Pt. 4(f)(iii) *infra*).

159.    The test for "willfulness" is "whether the debtor acted with substantial certainty

[that] harm [would result] or [that there was] a subjective motive to cause harm."  *See Adkins*,

567 B.R. at 507 (citing *Parsons v. Parks (In re Parks)*, 91 Fed.Appx. 817, 819 (4th Cir. 2003))

(holding that the entire outstanding loan balance owed by the debtor to Quality Car is

nondischargeable where debtor sold collateral without Quality Car's permission and failed to

turn over the proceeds to Quality Car).

160.    This Court has defined "malice" as follows:

"Malice" may also be defined as "causing injury without just cause or excuse,"
*Id.*; *Craig*, 2016 WL 4082620 at *9, 2016 U.S. Dist. LEXIS 99822 at *25 (citing
*Desert Palace*, 2015 WL 5785822 at *6, 2015 U.S. Dist. LEXIS 132580 at *16)
or as being done "deliberately, intentionally, and with knowing disregard for [the]
plaintiff's rights." *Reed v. Owens (In re Owens)*, 449 B.R. 239, 255 (Bankr. E.D.
Va. 2011) (quoting *Johnson v. Davis (In re Davis)*, 262 B.R. 663, 670–71 (Bankr.
E.D. Va. 2001)) (internal quotation marks omitted). Some courts have held that,
in cases involving conversion of property, "**malicious intent must be
demonstrated by evidence that the debtor had knowledge of the creditor's
rights and that, with that knowledge, proceeded to take action in violation of
those rights**." *Wooten*, 423 B.R. at 134 (quoting *In re Nelson*, 67 B.R. 491, 497
(Bankr. D. Minn. 1985)) (internal quotation marks omitted). **That "knowledge"
can be "inferred from the debtor's experience in the business, his
concealment of the sale, or by his admission that he has read and understood**

**the security agreement**." *Id.* No specific "ill will" or "specific intent" against the creditor need be shown to prove malice. *Wooten*, 423 B.R. at 130 (citing *First Nat'l Bank v. Stanley (In re Stanley)*, 66 F.3d 664, 667 (4th Cir. 1995)).

*Adkins*, 567 B.R. at 508–09 (Bankr. S.D.W. Va. 2017) (emphasis added) (internal citations omitted).

161.    Any movant under section 523(a)(6) for willful and malicious conversion must demonstrate three elements: "(1) the debtor caused an injury; (2) the debtor's action[s] were willful; and (3) that the debtor's actions were malicious." *See Adkins*, 567 B.R. at 508 (citing *Ocean Equity Group, Inc. v. Wooten (In re Wooten)*, 423 B.R. 108, 128 (Bankr. E.D. Va. 2010)).

162.    Wellford is an experienced businessman and knew and understood the Plaintiffs' rights under the Purchase Agreement and Guaranty.

163.    Wellford's collection and conversion of the Rental Funds was both intentional and willful, and was wholly without proper authorization or consent.

164.    Wellford's conversion of the Rental Funds, which exceeded $1.5 million, constitutes a malicious act because it was both wrongful and without just cause or excuse.

165.    Wellford's malicious intent is evident in his knowledge of the Plaintiffs' rights and intentional acts in violation of those rights.

166.    Wellford knew that his actions would cause injury to the Plaintiffs.

167.    Wellford's actions described above caused injury to RDA and WVWDA in that WVWDA has not received the payments on the Note and both WVWDA and RDA have incurred costs to pursue payments from Wellford.

168.    WVWDA and RDA seek compensatory damages, punitive damages, attorney costs, fees and expenses, and all other relief that may be deemed appropriate.

169.    The total amount of Plaintiffs' damages caused by Wellford's willful and malicious actions constitutes a non-dischargeable debt under 11 U.S.C. § 523(a)(6).

4829-6386-9353.v7

**Punitive Damages**
**(Plaintiffs against Defendants)**

170.    Paragraphs 1 through 169 are incorporated herein by reference.

171.    West Virginia law allows punitive damages for breach of contract where the "breach of contract amounts to an independent and willful tort since the plaintiff has the right to elect whether he will proceed in tort or upon contract." *Warden v. Bank of Mingo*, 176 W.Va. 60, 65 n. 7, 341 S.E.2d 679, 684 (1985).

172.    Under West Virginia law, punitive damages are appropriate when "the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety, and welfare of others." W. Va. Code § 55-7-29(a).

173.    Defendants' material breaches of the Purchase Agreement and Guaranty caused by committing actual fraud, making false representations, and/or conversion of the Rental Funds was done with actual malice toward Plaintiffs and conscious, reckless and outrageous indifference to the welfare of Plaintiffs.

174.    Further, "one of the infrequently encountered factors supporting an award of punitive damages [is] unprosecuted criminal conduct [.]" *McClung v. Marion County Comm'n*, 178 W. Va. 444, 452, 360 S.E.2d 221, 229 (1987) (citing *Wells v. Smith*, 171 W. Va. 97, 104-05, 297 S.E.2d 872, 879-90, *overruled on other grounds by Garnes v. Fleming Landfill*, Inc., 413 S.E.2d 897, 908 (W.Va. 1991)).

175.    An award of punitive damages is appropriate here because of unprosecuted criminal conduct by the Defendants for conversion (Count V), obtaining money by false pretenses (Count VIII) and embezzlement, as described below.

176.     West Virginia law on embezzlement provides that when "any agent, clerk or servant of any firm or person, or company or association of persons not incorporated, embezzles or fraudulently converts to his own use . . . money . . . of any other person, which shall have come into his possession, or been placed under his care or management, by virtue of his office, place or employment, he shall be guilty of larceny thereof." W. Va. Code § 61-3-20.

177.     Under West Virginia law, the crime of embezzlement involves "(1) the trust relation of the person charged, and that he falls within that class of persons named; (2) that the property or thing claimed to have been embezzled or converted is such property as is embraced in the statute; (3) that is the property of another person; (4) that it came into the possession, or was placed in the care, of the accused, under and by virtue of his office, place or employment; (5) that his manner of dealing with or disposing of the property, constituted a fraudulent conversion and an appropriation of the same to his own use; and (6) that the conversion of the property to his own use was with the intent to deprive the owner thereof." *State v. Berry*, 239 W. Va. 226, 233, 800 S.E.2d 264, 271 (2017) (quoting Syl. Pt. 2, in part, *State v. Moyer*, 58 W. Va. 146, 52 S.E. 30 (1905)).

178.     The Purchase Agreement and the Guaranty established a trust relationship wherein the Defendants were authorized to control property of the Plaintiffs and owed fiduciary duties to the Plaintiffs.

179.     The Rental Funds collected by Corotoman under the Purchase Agreement and the Lease is property embraced by West Virginia's embezzlement statute. See W. Va. Code § 61-3-20.

180.     The Rental Funds belonged to RDA pursuant to the August 5, 1999 Assignment of Lease, wherein Corotoman assigned the Lease to RDA, and the Purchase Agreement required

31

the Defendants to provide all Rental Funds to WVWDA in payment of RDA's indebtedness on the Infrastructure Loan.

181.    Wellford, as the sole owner, controller, and employee of Corotoman, caused Corotoman to collect the Rental Funds on RDA's behalf pursuant to the Purchase Agreement and then impermissibly use them for his own purposes.

182.    These Rental Funds belonged to the RDA and were required to be paid to WVWDA under the Purchase Agreement.

183.    The Defendants were not lawfully entitled to use the Rental Funds personal use.

184.    The Defendants abused their authority to act as Landlord to appropriate the Rental Funds from RDA and WVWDA.

185.    In doing so, the Defendants intended to permanently deprive Plaintiffs of the Rental Funds.

186.    The Defendants' conduct in appropriating the Rental Funds for their own use without Plaintiffs' knowledge or consent demonstrates that their actions involved intentional wrongdoing or deceit.

187.    Therefore, the Defendants' conduct constitutes a breach of W. Va. Code § 61-3-20, West Virginia's code section on embezzlement.

188.    To this date, neither Defendant has been charged with any crime, and therefore Defendants' conduct is "unprosecuted criminal conduct."

189.    Therefore, an award of punitive damages is appropriate.


*[Remainder of Page Intentionally Left Blank]*

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully pray that the Court grant and enter a judgment

in their favor and against the Defendants as follows:

(a)        Declaratory judgment in favor of the Plaintiffs that
- i. Defendants have materially breached the Purchase Agreement and Guaranty;
- ii. Defendants are liable for conversion of the Rental Funds;
- iii. Defendants are liable for actual fraud;
- iv. Defendants are liable for false representations;
- v. Defendants are liable for obtaining money by false pretenses; and
- vi. Defendants are liable to the Plaintiffs for punitive damages.

(b)        Judgment in favor of the Plaintiffs that Defendants are in material breach of the Purchase Agreement, Wellford is in material breach of the Guaranty, and both Defendants are jointly and severally liable to repay $2,021,097.35, plus punitive damages and post-petition attorney fees, post-petition costs and expenses, post-petition interest, and all other relief that may be deemed appropriate;

(c)        Judgment in favor of RDA equal to the amount of foregone real estate taxes, as calculated under Paragraph 11 of the Purchase Agreement.

(d)        Judgment in favor of RDA that the Defendants are required to repair the roof and HVAC system on the Premises or are otherwise required to pay for repair of the roof and HVAC system.

(e)        Declaration that all judgments made in favor of the Plaintiffs pursuant to subparagraphs (b) – (d) of the Prayer for Relief may not be discharged in Wellford's bankruptcy case.

(f)        Judgment in favor of the Plaintiffs for any other relief that this Court deems equitable, just, and proper.

Respectfully submitted,

**WEST VIRGINIA WATER DEVELOPMENT
AUTHORITY ACTING ON BEHALF OF THE
WEST VIRGINIA INFRASTRUCTURE AND
JOBS DEVELOPMENT COUNCIL**

By Counsel

/s/   *Elizabeth A. Amandus*
Elizabeth A. Amandus (WV Bar No. 11062)
Ellen S. Cappellanti (WV Bar No. 627)
Thomas J. Hurney, Jr. (WV Bar No. 1833)
Vivian H. Basdekis (WV Bar No. 10587)
Valerie F. Gainer (WV Bar No. 13033)
Jackson Kelly PLLC
500 Lee Street, East, Suite 1600
Post Office Box 553
Charleston, West Virginia 25322
Phone: (304) 340-1000
Fax:    (304) 340-1080
Email: eamandus@jacksonkelly.com
        ecappellanti@jacksonkelly.com
        thurney@jacksonkelly.com
        vhbasdekis@jacksonkelly.com
        valerie.gainer@jacksonkelly.com

**REGIONAL DEVELOPMENT AUTHORITY
OF CHARLESTON-KANAWHA COUNTY,
WEST VIRGINIA METROPOLITAN REGION**

By Counsel

/s/    *Joseph T. Johns*
Joseph T. Johns (WV Bar No. 12754)
Turner & Johns PLLC
Suite 200, 216 Brooks Street
Charleston, West Virginia 25301
Phone: (304) 720-2329
Fax:    (304) 720-2311
Email: jjohns@turnerjohns.com

4829-6386-9353.v7